**UNITED STATES**

v.

**Senior Airman Michael T. NERAD,
United States Air Force.**

**ACM 36994.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 7 Feb. 2007.

29 May 2009.

Appellate Counsel for the Appellant: Lieutenant Colonel Mark R. Strickland, Major Shannon A. Bennett, and Major Lance J. Wood.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Lieutenant Colonel Matthew S. Ward, Major Jeremy S. Weber, and Captain Coretta E. Gray.

Before FRANCIS, Senior Judge, HEIMANN, and THOMPSON, Appellate Military Judges.

## OPINION OF THE COURT

FRANCIS, Senior Judge:

Consistent with his pleas, the appellant was convicted by a military judge, sitting as a general court-martial, of one specification each of failure to obey a lawful order, wrongful disposition of military property, larceny of military property, sodomy, possession of child pornography, and adultery, in violation of Articles 92, 108, 121, 125, and 134, UCMJ, 10 U.S.C. §§ 892, 908, 921, 925, 934. The adjudged and approved sentence consists of a dishonorable discharge, 12 months confinement, forfeiture of all pay and allowances, reduction to E–1, and a reprimand.

The appellant asserts he was subjected to cruel and unusual post-trial punishment, in violation of the Eighth Amendment [1] and Article 55, UCMJ, 10 U.S.C. § 855.[2] Although not raised by the appellant on appeal,[3] this Court also specified the issue of whether, in relation to the appellant's conviction for possession of child pornography, the Court, exercising its mandate under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to approve only such findings and sentence that, in the opinion of the Court, should be approved, has the power, in the interest of justice, to set aside a finding of guilty that is otherwise determined to be correct in law and fact. For the reasons set forth below, we find the appellant was not subjected to cruel and unusual punishment. However, we answer the specified issue in the affirmative, set aside the conviction for possession of child pornography, and reassess the sentence.

*Cruel and Unusual Punishment*

We review claims of cruel and unusual post-trial punishment de novo. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007); *United States v. Pena*, 64 M.J. 259, 265 (C.A.A.F.2007). Absent evidence that the appellant has been subjected to one or more of certain enumerated punishments specifically prohibited by Article 55, UCMJ, we apply the same standard to claims of Eighth Amendment and Article 55, UCMJ violations. *Pena*, 64 M.J. at 265.[4] To prevail, the appellant "must show: (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he 'has exhausted the prisoner-grievance system [and] petitioned for relief under Article 138, UCMJ, 10 [U.S.C.] § 938.'" *United States v. Lovett*, 63 M.J. 211, 216 (C.A.A.F.2006) (footnotes and citations omitted).

The appellant's claim arises from his post-trial stay in a local civilian confinement facility, the Burlington County Jail, Mount Holly, New Jersey, and is supported by a personal affidavit. According to the appellant, he was held at the Burlington County facility for 23 days before being transferred to a military facility.[5] During that time, the appellant avers he was:

1. Housed in a two-person cell with two other inmates, leaving nearly no room to move around;

2. Forced to sleep on a mat on the floor, in front of and touching the toilet, because

---

1. U.S. Const. amend. VIII.

2. The appellant raised this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

3. Although the appellant did not raise this issue on appeal, his post-trial submissions to the convening authority asked that the convening authority not approve the finding of guilty to possession of child pornography, for reasons similar to those enunciated in this opinion.

4. In addition to prohibiting "cruel or unusual punishment," Article 55, UCMJ, 10 U.S.C. § 855, prohibits "[p]unishment by flogging or by branding, marking, or tattooing" and "the use of irons ... except for the purpose of safe custody." None of the specific prohibitions are at issue here.

5. A letter submitted by the government from the Burlington County Corrections Department indicates the appellant was confined at the county facility for 21 days. Without deciding, we assume for purposes of our evaluation that the greater time period asserted by the appellant is accurate.

both beds were occupied by the other inmates;

3. Denied soap, deodorant, a razor, and toothpaste for 14 days as the result of a prison supply issue;

4. Exposed to second-hand marijuana smoke;

5. Denied a blanket for four days after another inmate stole his and "sold" it for cookies;

6. Denied medical assistance after he was accidentally hit with pepper spray when the guards tried to break up a fight between other inmates; and,

7. Denied a crutch, pain medication, and physical therapy for a documented back problem, causing him "severe daily pain." Lack of a crutch also denied him access to the gym, library, and other unspecified activities afforded other prisoners because he could not use stairs without it.

In addition, the appellant claims that inmates gave haircuts to other inmates without cleaning the razor between haircuts. However, the appellant does not state whether or not he personally had his hair cut in that manner.

Setting aside, for the moment, the two medical treatment concerns, none of the other conditions enumerated by the appellant constitute cruel and unusual punishment under the standards established by our superior courts. While such conditions may very well have made the appellant less comfortable than he might have liked, neither the Eighth Amendment nor Article 55, UCMJ, mandate "comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)); *see also Pena*, 64 M.J. at 265. Rather, the challenged conditions must constitute "objectively, sufficiently serious act[s] or omission[s]" that resulted in "an excessive risk to inmate health or safety" knowingly disregarded by prison officials. *Lovett*, 63 M.J. at 215–16 (quoting *Brennan*, 511 U.S. at 837, 114 S.Ct. 1970). Accepting the appellant's assertions at face value, the

conditions he describes simply do not rise to that level.[6]

Turning to the asserted medical concerns, we note that "[d]enial of adequate medical attention can constitute an Eighth Amendment or Article 55[, UCMJ,] violation." *United States v. White*, 54 M.J. 469, 474 (C.A.A.F.2001) (citing *United States v. Sanchez*, 53 M.J. 393, 396 (C.A.A.F.2000)). However, medical care provided to inmates need only be reasonable, not "perfect" or "the best obtainable." *Id.* at 475 (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)).

■ The appellant has not met his burden of establishing that he was denied reasonable medical care. With regard to the pepper spray incident, the appellant avers only that he was accidentally sprayed and was not offered medical assistance. He has provided no evidence, or even asserted, that he was physically injured by the spray or required medical treatment. With regard to treatment of the appellant's asserted back problem, the DD Form 2707, *Confinement Order*, included in the record of trial indicates that at the time he entered confinement, he was being treated for sciatica and was using a crutch. Although the appellant avers he also had a "documented" need for pain medication (Percocet), he has provided no such documentation and it is not included on the confinement order. However, even accepting at face value the appellant's assertion that he had been prescribed such medication at the time he entered confinement, he does not prevail on this issue. It is clear from the appellant's own affidavit that the decision to discontinue the pain medication and use of the crutch was made by the medical staff at the Burlington County Jail. Although it is evident the appellant found that change in his medical regimen objectionable, he has provided no evidence that such medical determination was unreasonable.

Having concluded that the conditions complained of by the appellant did not constitute cruel or unusual treatment, we need not address whether or not he exhausted his ad-

---

6. We assume, without deciding, that the appellant's description of the living conditions and his

treatment at the Burlington County Jail is accurate.

ministrative remedies before seeking judicial redress.

### Child Pornography

■ The adultery, sodomy, child pornography, and Article 92, UCMJ, offenses all arose out of the appellant's love affair with a 17–year–old. During the course of that relationship, the appellant's paramour sent him, via the Internet, several nude or partially nude pictures of herself, including a video clip in which she is naked. The appellant, with his girlfriend's knowledge and consent, also took some nude pictures of her, including some depicting the couple engaged in a sex act. The appellant did not distribute the pictures to others, but simply retained them on his home computer, where they were found after his wife reported the adulterous affair. Because the appellant's girlfriend was 17 at the time the pictures were taken, the appellant's possession of the images was technically in violation of the prohibitions on child pornography, for which purposes a "minor" is anyone under the age of 18. 18 U.S.C. § 2256(1). Thus, the appellant was in the unique position of having a relationship with someone he could legally see naked and, but for his existing marriage, legally have sex with, but could not legally possess nude pictures of her that she took and sent to him.[7] Having considered the entire record, we conclude that the appellant's possession of the photos under these circumstances is not the sort of conduct which warrants criminal prosecution for possessing child pornography and that this conviction unreasonably exaggerates the criminality of his conduct. The question is whether we can set aside the conviction on that basis alone, even though we find no legal error and the appellant never raised an issue at trial, pleading guilty to that offense. The government, in response to the specified issue, unconvincingly argues that neither the plain language of the statute, its legislative history, nor case precedent indicates the Court can set aside a finding of guilty that is found correct in law and fact. We disagree on all points.

Article 66(c), UCMJ, provides that this Court "may affirm only such *findings of guilty* and the sentence or such part or amount of the sentence, as it finds correct in law and fact *and determines,* on the basis of the entire record, *should* be approved." (Emphasis added). The plain language of this provision effectively establishes a

> three-pronged constraint on [our] authority to affirm. [To affirm the findings and sentence, we] must be satisfied that the *findings* and sentence are (1) "correct in law," and (2) "correct in fact." [However, e]ven if these first two prongs are satisfied, the [C]ourt may affirm only so much of the *findings* and sentence as "[we determine], on the basis of the entire record, *should* be approved."

*United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F.2002) (citing *United States v. Powell,* 49 M.J. 460, 464–65 (C.A.A.F.1998)) (emphasis added). Thus, it is clear that we can overturn a finding or sentence, even if it is correct in law and fact, if we find that it should *not* be approved. Further, while our power to overturn a finding or sentence based on an error of law is limited by the Article 59(a), UCMJ, 10 U.S.C. § 859(a), requirement that the error materially prejudice a substantial right of the accused, that limitation does not apply to prongs two and three. *Id.* "A clearer *carte blanche* to do justice would be difficult to express." *United States v. Claxton,* 32 M.J. 159, 162 (C.M.A.1991) (citations omitted). "If the Court . . ., in the interest of justice, determines that a certain finding or sentence should not be approved . . . the [C]ourt need not approve such finding or sentence." *Id.* While most cases that have addressed this power have done so within the context of sentence appropriateness determinations, the plain language of the statute, and the quoted decisions, make clear that it is not limited to that application.

The legislative history of Article 66, UCMJ, also supports this Court's broad authority to overturn a finding or sentence, even in the absence of legal or factual error.

---

**7.** We note that other than as a matter of adultery because of his existing marriage, the relationship between the appellant and his paramour was not a crime under Canadian law or the law of the State of New York, where their liaisons occurred, or under the UCMJ.

The current language of Article 66(c), UCMJ, is virtually identical to the original version enacted as part of the Uniform Code of Military Justice in 1950. 10 U.S.C. § 866(c) (originally enacted in Pub.L. No. 81–506, art. 66(c), 64 Stat. 107, 128 (1950)). Formal committee reports on the then new UCMJ directly addressed only the power of the boards of review to set aside all or part of a sentence if they deemed it "inappropriate." S.REP. No. 81–486 (1949); H.R. REP. No. 81–491 (1949). However, it is clear from the hearings on the proposed legislation that some commentators recognized the broad authority the same provision gave the boards of review to overturn findings even in the absence of legal error, and specifically advised Congress of such. In this regard, Major General (Maj Gen) Kenneth F. Cramer, Chief, National Guard Bureau, in a statement presented to Congress by Maj Gen Raymond H. Fleming, observed that under the new Article 66, UCMJ, provision, the "boards of review are to be given extremely wide discretionary powers which will enable them to overrule, with or without legal reasons, the actions of courts and of all appointing authorities." *Uniform Code of Military Justice: Hearing on H.R. 2498 Before a Subcomm. of the H.R. Comm. On Armed Services,* 81st Cong. 772 (1949). The Judge Advocate General of the Army, Maj Gen Thomas H. Green, made the same point in hearings before the Senate. In a prepared statement, Maj Gen Green complained that the Article 66(c), UCMJ, language currently at issue here

> authorizes [the boards of review] to consider other than legal matters in determining what part of a finding or the sentence should be approved. For example, a board may consider that a given order which an accused is charged with having violated is unwise, and that therefore, on the basis of the entire record, a finding should be disapproved. This makes possible an unwarranted invasion of the command prerogative and would authorize the board of review to substitute its judgment on military policy for that of the commander in the field. This determination under the proposed bill would be absolutely final. I could not appeal that case to the Court

of Military Appeals because the board's determination would not be based on a question of law.

*Uniform Code of Military Justice: Hearing on S. 857 and H.R. 4080 Before a Subcomm. of the S. Comm. on Armed Services,* 81st Cong. 258 (1949).

In response to questions by members of the Senate committee, Maj Gen Green reiterated that the language of Article 66(c), UCMJ, "would give the board of review ... the power to determine whether or not the findings and sentence are appropriate." *Id.* at 263. Based on those concerns, Maj Gen Green proposed substantial revisions to the version of Article 66(c), UCMJ, which, if adopted, would have sharply curtailed the power of the boards of review to overturn findings. *Id.* at 263–64. Congress did not adopt those changes, but enacted Article 66(c), UCMJ, in the form proposed, which remains essentially unchanged to this day. Having found that we have the power to overturn the appellant's conviction for possession of child pornography even in the absence of legal or factual error, we determine to do so here.

■ As previously noted, we find that under the unique circumstances of this case, the charge of possession of child pornography to which the appellant pled and was found guilty, though technically accurate, unreasonably exaggerates the criminality of the appellant's actions. That is particularly true given the fact that a conviction for child pornography would require that the appellant to register as a sex offender and the significant consequences of such registration, including the restrictions common to most states on where those registered may reside within any given community.

Based on the unique facts of this case, as set forth in the record, considering the profound implications of a conviction of possession of child pornography, and relying on the broad mandate provided this Court by Congress under Article 66(c), UCMJ, we determine that the appellant's conviction for possession of child pornography should not be approved. Accordingly, the finding of guilty

to Specification 1 of Charge VI is set aside and dismissed.

### Sentence Reassessment

Having set aside the finding of guilty to the possession of child pornography offense, we must determine whether a rehearing on sentence is required. If we can determine to our satisfaction that, absent the finding of guilty to Specification 1 of Charge VI, the military judge would have adjudged a sentence of at least a certain severity, we may reassess the sentence. *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F.2006) (citing *United States v. Sales*, 22 M.J. 305, 308 (C.M.A.1986)). Applying this analysis, and after careful consideration of the entire record, we are satisfied beyond a reasonable doubt that, in the absence of Specification 1 of Charge VI, the military judge would still have adjudged the same sentence, and so reassess the sentence accordingly. By far the most serious of the appellant's conduct was his larceny and wrongful disposition of military property, followed, to a lesser extent, by the adultery and Article 92, UCMJ, offenses. Within the unique circumstances of this case, the appellant's possession of what was technically child pornography was merely incidental to the adulterous relationship.

### Conclusion

The findings, as amended, and the sentence, as reassessed, are correct in law and fact and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings, as amended, and the sentence, as reassessed, are

AFFIRMED.

