*140 Judge RYAN
delivered the opinion of the Court.
In accordance with his pleas, a general court-martial, composed of a military judge sitting alone, found Appellee guilty of failure to obey a lawful order, wrongful disposition of military property, larceny, sodomy, possession of child pornography, and adultery, violations of Articles 92, 108, 121, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 908, 921, 925, 934 (2006). The military judge sentenced Appel-lee to a dishonorable discharge, confinement for twelve months, forfeiture of all pay and allowances, a reprimand, and a reduction to the grade of E-l. The convening authority approved the findings and sentence.
The United States Air Force Court of Criminal Appeals (CCA) reviewed the case pursuant to Article 66(e), UCMJ, 10 U.S.C. § 866(c) (2006). United States v. Nerad, 67 M.J. 748, 749 (A.F.Ct.Crim.App.2009). Despite concluding that there was no legal or factual error in the case, it nonetheless set aside and dismissed the finding of guilty to the child pornography offense based on the “unique circumstances” of the ease. Id. at 752-53; see infra Part I. The court approved the remaining findings and approved the sentence as adjudged. 67 M.J. at 753.
The Judge Advocate General of the Air Force certified the ease to this Court for review of the following issue:
WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN NULLIFYING APPELLEE’S FACTUALLY AND LEGALLY SUFFICIENT CONVICTION FOR POSSESSION OF CHILD PORNOGRAPHY.
We hold that while CCAs have broad authority under Article 66(c), UCMJ, to disapprove a finding, that authority is not unfettered. It must be exercised in the context of legal— not equitable — standards, subject to appellate review. United States v. Quiroz, 55 M.J. 334, 339 (C.A.A.F.2001). Relatedly, while Article 66(c), UCMJ, affords a CCA broad powers, when faced with a constitutional statute a CCA “cannot, for example, override Congress’ policy decision, articulated in a statute, as to what behavior should be prohibited.” United States v. Oakland Cannabis Buyers’ Coop., 532 U.S. 483, 497, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001).
Here, it is unclear from the CCA’s opinion whether it exceeded its authority by disapproving a finding with reference to something other than a legal standard, potentially infringing on the sole prerogative of the convening authority under Article 60, UCMJ, 10 U.S.C. § 860 (2006), to disapprove a finding based on purely equitable grounds. It is also unclear from the CCA’s opinion whether the CCA abused its discretion by refusing to affirm a finding because it thought it “unreasonable” to criminalize such conduct “under the circumstances,” even though the circumstances fell squarely within the definition of child pornography crafted by Congress and referenced by the CCA. 18 U.S.C. § 2256(1) (2006) (defining “minor” as “any person under the age of eighteen years”), cited in Nerad, 67 M.J. at 751. Accordingly, the case is remanded for further proceedings before the lower court.
I.
A.
The facts relevant to the charge and specification dismissed by the CCA involve a consensual sexual relationship between Appellee, who was married, and GL, a seventeen-year-old female. They each took sexually explicit pictures of one another, including pictures in which they were engaged in sexual conduct with each other. Based on his possession of these sexually explicit pictures of GL, the Government charged Appellee with possession of child pornography in violation of Article 134, UCMJ.
Appellee not only did not contest the child pornography charge at trial, but prior to entering his pleas he signed a “Notification of Sex Offender Registration Requirement,” which informed him that he might be required to register as a sex offender upon conviction of the charged offense.
In his clemency request to the convening authority, Appellee asked that the convening authority set aside the child pornography conviction. See generally Article 60(c)(1), *141 UCMJ (providing that the convening authority may exercise “sole discretion” as a matter of “command prerogative” in deciding whether to set aside or modify the findings or sentence); Rule for Courts-Martial (R.C.M.) 1107(e) Discussion (noting that the convening authority may set aside a finding “for any reason or no reason”). While acknowledging that he had committed “a crime,” that the circumstances did not provide “a defense,” and that he was “in fact, guilty of this offense,” Appellee requested that the convening authority take into account the particular circumstances of his relationship with GL and “determine [that] a federal conviction for this offense is not appropriate in my ease.” The convening authority declined to grant this clemency request.
B.
Appellee did not challenge his convictions in his submission of issues to the CCA under Article 66(c), UCMJ. Rather, he requested sentence relief through an Eighth Amendment challenge to the conditions of his post-trial confinement, a request that the lower court rejected. Nerad, 67 M.J. at 749-50.
On an issue raised sua sponte, however, the CCA determined that it had the power to set aside the child pornography finding even though it could “find no legal error and the appellant never raised an issue at trial, pleading guilty to that offense.” Id. at 751. As justification for this action the CCA noted that Appellee “was in the unique position of having a relationship with someone he could legally see naked and, but for his existing marriage, legally have sex with, but could not legally possess nude pictures ... that she took [of herself] and sent to him.” Id. at 751. The CCA concluded that “possession of the photos under these circumstances is not the sort of conduct which warrants criminal prosecution for possessing child pornography and that this conviction unreasonably exaggerates the criminality of his conduct.” Id. The CCA took particular note of the fact that a conviction for child pornography would require Appellee to register as a sex offender and endure “the significant consequences of such registration.” Id. at 752. Based upon these considerations, the CCA dismissed the finding of guilty to the child pornography offense, affirmed the remaining findings, and approved the sentence as adjudged. Id. at 752-53.
II.
Article 66(e), UCMJ, states, in relevant part, that a CCA “may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.” Broken into its constituent parts, this statutory language provides that a CCA may affirm only such findings and sentence that it: (1) finds correct in law; (2) finds correct in fact;[1] and (3) determines, on the basis of the entire record, should be approved. United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F.2002).[2] At issue in this case is the scope and meaning of the “should be approved” language. The scope and *142 meaning of Article 66(c), UCMJ, is a matter of statutory interpretation, a question of law reviewed de novo. United States v. Lopez de Victoria, 66 M.J. 67, 73 (C.A.A.F.2008).
The parties agree, consistent with our precedent, that a CCA may approve only that part of a sentence that it finds “should be approved.”[3] See, e.g., United States v. Christopher, 13 C.M.A. 231, 235-36, 32 C.M.R. 231, 235-36 (1962). In reviewing the exercise of this power, we ask if the CCA abused its discretion or acted inappropriately—i.e., arbitrarily, capriciously, or unreasonably—as a matter of law. See, e.g., United States v. Jones, 39 M.J. 315, 317 (C.M.A.1994) (“We will only disturb the [CCA’s] reassessment [of a sentence] in order to prevent obvious miscarriages of justice or abuses of discretion.”) (citations and quotation marks omitted); Christopher, 13 C.M.A. at 236, 32 C.M.R. at 236.
The parties disagree, however, on the scope of a CCA’s power as to findings. Ap-pellee argues that “should be approved” means that the CCA has unfettered discretion to disapprove, for any reason or no reason at all, a finding that is correct in law and fact and that the exercise of that discretion is not subject to appellate review. The Government takes the opposite position, arguing that if a finding is correct in law and fact the CCA must approve it. Consistent with our case law, we adopt neither position. See Quiroz, 55 M.J. at 338-39 (permitting the CCA to disapprove legally and factually sufficient findings but remanding to ensure the lower court applied a legal as opposed to an equitable standard); Tardif, 57 M.J. at 224 (recognizing that a CCA has discretion under Article 66(e), UCMJ, to fashion an appropriate remedy for excessive post-trial delay with respect to findings or sentences that are legally and factually correct).
A.
We begin from the settled premise that in exercising its statutory mandate a CCA has discretion to approve only a sentence, or such part of a sentence, that it “determines, on the basis of the entire record, should be approved,” Article 66(c), UCMJ, even if the sentence is “correct.” See United States v. Atkins, 8 C.M.A. 77, 79, 23 C.M.R. 301, 303 (1957) (“In short, the criterion for the exercise of the board of review’s power over the sentence is not legality alone, but legality limited by appropriateness.”). Even that broad discretion is not unfettered, however. See United States v. Lacy, 50 M.J. 286, 287-89 (C.A.A.F.1999) (reviewing a CCA’s sentence appropriateness determination for abuse of discretion).
The Government argues that this has no bearing on the certified question because “should be approved” has meaning only with respect to a CCA’s power to disapprove or modify a sentence. We disagree that “should be approved” has no meaning with respect to a CCA’s action on findings. “[Fjindings” and “sentence” are grammatically coupled in Article 66(c), UCMJ, joined equally with “and determines ... should be approved.” The phrase “should be approved” must have meaning with respect to findings as well as sentence and modify both. When a modifier is set off from a series of antecedents by a comma, the modifier should *143 be read to apply to each of those antecedents. Bingham, Ltd. v. United States, 724 F.2d 921, 925-26 n. 3 (11th Cir.1984); see also, e.g., Elliot Coal Mining Co. v. Director, Office of Workers’ Comp. Programs, 17 F.3d 616, 630 (3d Cir.1994) (“[U]se of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to all of the previous phrases and not merely the immediately preceding phrase.”). Therefore, it is impossible — based on the statute — to acknowledge a CCA’s power to modify or disapprove a “correct” sentence while disagreeing it has any such power with respect to a “correct” finding. Nor is such a view consistent with our limited precedent on this question. See, e.g., Quiroz, 55 M.J. at 338-39; United States v. Drexler, 9 C.M.A. 405, 408, 26 C.M.R. 185, 188 (1958).
B.
Despite the statutory text and our case law, the Government and dissent, Nerad, 69 M.J. at 153-54 (Stucky, J., dissenting), rely on language in United States v. Waymire, 9 C.M.A. 252, 26 C.M.R. 32 (1958), for the proposition that whatever the CCA’s power with respect to sentence, the CCA has no discretion when it comes to approving legally and factually sufficient findings. The Way-mire Court did assert that:
Unlike a convening authority, who may disapprove findings of guilt for any reason, or for no reason at all, a board of review may only disapprove such findings as it finds incorrect in law and fact. It was never intended that a board of review be given the power to disapprove findings in its “discretion.”
Id. at 255, 26 C.M.R. at 35 (citation omitted). But in that case the board of review sidestepped the legal issues entirely, acting instead in a manner “not unlike an arbitration or mediation board designed to effect an adequate and satisfactory compromise between negotiating parties”. Id. at 254, 26 C.M.R. at 34. On appeal, the Judge Advocate General of the Army asked this Court to consider “whether a board of review had the power to set aside findings of guilt without first deciding whether the court-martial had jurisdiction, or whether such findings were incorrect in law and fact.” Id. at 253, 26 C.M.R. at 33. This Court held that the board did not have such a power, stating that “in setting aside the forgery conviction solely on the basis of ‘substantial justice,’ [the board of review] exceeded the scope of its authorized statutory functions.” Id. at 255, 26 C.M.R. at 35. We did not present a holding on what the words “should be approved” entailed in the context of a board’s action on legally and factually sufficient findings — nor could we, since the board had not even attempted to undertake such sufficiency determinations. Our use of the phrase “substantial justice” served to reject the board’s assumption that its function was to forge an equitable compromise between the parties. Waymire thus serves as precedent for the unremarkable proposition that CCAs may not disapprove findings on equitable grounds or disregard their statutory duty to determine legal and factual sufficiency.[4]
Further, the language the Government and the dissent draw from Waymire has not functioned in practice as precedent on the question whether the CCAs may disapprove findings that are correct in law and fact.[5] Indeed, one month after Waymire, this Court decided Drexler with language suggesting that intermediate courts had such a power:
Apart from the special rules of law applicable in this area, there is the general principle that an appellate tribunal can dismiss even a valid finding as part of its action in correcting errors at the trial and to insure *144 justice to the accused. This general power is possessed by the boards of review.
9 C.M.A at 408, 26 C.M.R. at 188 (citations omitted);[6] see also Quiroz, 55 M.J. at 338 (noting that we have described Congress’s grant of authority to the CCAs under Article 66(c), UCMJ, as an “‘awesome, plenary, de novo power,’ ” but denying that this power is equitable in nature (quoting United States v. Cole, 31 M.J. 270, 272 (C.M.A1990))); United States v. Claxton, 32 M.J. 159, 162 (C.M.A.1991) (holding that a CCA may disregard doctrines like waiver “in the interest of justice” to reach legal errors that would otherwise be uneognizable).
Today’s decision does not overrule Way-mire: Waymire’s holding on the certified issue in that case — that a CCA may not decide a case on equitable grounds and avoid its duty to determine whether a finding is correct in law and fact, 9 C.M.A. at 254-55, 26 C.M.R. at 34-35 — remains undisturbed. Waymire does not answer the certified issue in this case. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (“It is to the holdings of our cases, rather than their dicta, that we must attend-”). And dictum otherwise contained in the case is both contrary to the statutory text and has been eroded by subsequent decisions.
C.
While we acknowledge that a CCA’s power is not as narrow as the Government suggests, nor as broad as Appellee desires, this does not answer the separate question of its scope with respect to a finding that is correct in law and fact.
At first glance, the language “it finds ... should be approved” in Article 66(e), UCMJ, might appear to empower a CCA to modify both findings and sentence for any reason or no reason at all, which is Appellee’s position. Admittedly, this Court has used broad language with respect to the CCAs’ discretion that could be read to support this interpretation. See, e.g., Tardif, 57 M.J. at 223 (recognizing the broad power of the Courts of Criminal Appeals to protect an accused); Claxton, 32 M.J. at 162 (indicating that Article 66(c), UCMJ, confers to CCAs “carte blanche to do justice”); see also United States v. Lanford, 6 C.M.A. 371, 379, 20 C.M.R. 87, 95 (1955) (stating that the distinction in labeling CCA action as clemency rather than judicial action “matters little, so long as it is clearly understood ... [that the Boards of Review maintain] the power to treat an accused with less rigor than their authority permits”) (citation and quotation marks omitted). For “[i]n enacting the UCMJ in 1950, Congress saw fit to give the Boards of Review ... very broad powers with respect to the approved findings and sentences of courts-martial.” Beatty, 64 M.J. at 458. We have repeatedly — “[i]n words that have often been cited” — characterized a CCA’s Article 66(c), UCMJ, authority as an “awesome, plenary de novo power of review [that] grants unto the Court ... authority to, indeed, ‘substitute its judgment’ for that of the military judge .... [and] for that of the court members.”[7] Beatty, 64 M.J. at 458 (quoting Cole, 31 M.J. at 272) (alterations in original).
But the language in these cases does not exist in a vacuum. Notably, Congress used different language in granting review authority to a convening authority under Article 60, UCMJ, and CCAs under Article 66, UCMJ. This different language — along with the factual settings of cases acknowledging a CCA’s discretion to modify a sentence or finding *145 under Article 66(c), UCMJ, and well-established boundaries on a court’s discretion related to constitutional statutes — compels the conclusion that there are some limitations on a CCA’s power to disapprove a “correct” finding.
The eases interpreting Article 66(e), UCMJ, have reflected this Court’s attention to the specialized nature of the military justice system, particularly with respect to the unique functions and responsibilities of convening authorities and CCAs. Congress’s statutory grant of authority to the CCAs with respect to findings and sentence is more limited than the authority granted a convening authority. Congress provided the convening authority with clear unfettered discretion — as “a matter of command prerogative” — to modify findings and sentence under Article 60(c), UCMJ:
(1) The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority....
(2) ... The convening authority ... in his sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part.
(3) Action on the findings of a court-martial by the convening authority ... is not required. However, such person, in his sole discretion, may—
(A) dismiss any charge or specification by setting aside a finding of guilty thereto; or
(B) change a finding of guilty to a charge or specification to a finding of guilty to an offense that is a lesser included offense of the offense stated in the charge or specification.
Accord United States v. Finster, 51 M. J. 185, 186 (C.A.A.F.1999) (noting that convening authorities enjoy “unfettered discretion to modify the findings and sentence for any reason — without having to state a reason — so long as there is no increase in severity”); R.C.M. 1107(c) Discussion (noting a convening authority may set aside a finding “for any reason or no reason”).
While the CCA clearly has the authority to disapprove part or all of the sentence and findings, nothing suggests that Congress intended to provide the CCAs with unfettered discretion to do so for any reason, for no reason, or on equitable grounds, which is a function of command prerogative. See United States v. Prince, 16 C.M.A 314, 315-16, 36 C.M.R. 470, 471-72 (1966) (citing legislative history distinguishing the convening authority’s power of unfettered discretion over sentences from the more limited power of review of both intermediate appellate courts and this Court). The language of Article 60(c), UCMJ, gives a convening authority unfettered discretion; the language of Article 66(e), UCMJ, is not as bold. We assume Congress used different language for a reason. E.g., 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 46:6, at 252 (7th ed.2007). The CCAs’ power, therefore, must be more limited.
Nonetheless, the words “should be approved” do have some meaning, and we reject the proposition that the “should be approved” clause of Article 66(c), UCMJ, means only that the lower court can adjust findings and sentences that are incorrect in law or fact, at least as the standards for legal and factual sufficiency are ordinarily understood, see supra note 1. But see Nerad, 69 M.J. at 150-51 (Stucky, J., dissenting). That approach both fails to afford independent meaning to “should be approved” and renders it surplusage, as a CCA clearly may not approve a legally or factually insufficient finding or an illegal sentence.[8] See New *146 Process Steel, L.P. v. NLRB, No. 08-1457, 2010 U.S. LEXIS 4973, at *11, 2010 WL 2400089, at *4 (U.S. June 17, 2010) (citing Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (declining to adopt a “construction of the statute, [that] would render [a term] insignificant”)).[9]
Our sentencing decisions on this point underscore that the statutory phrase “should be approved” does not involve a grant of unfettered discretion but instead sets forth a legal standard subject to appellate review. See, e.g., United States v. Hutchison, 57 M.J. 231, 234 (C.A.A.F.2002) (remanding a lower court decision for de novo review in view of the possibility that the lower court, in holding a sentence to be inappropriate, exceeded its powers); see also Lacy, 50 M.J. at 288 (holding Article 66(c), UCMJ, bars the lower courts acting on issues of sentence appropriateness from committing “obvious miscarriages of justice or abuses of discretion” and referencing factors that a CCA might look to in determining whether sentence reassessment was warranted); Christopher, 13 C.M.A. at 236, 32 C.M.R. at 236 (noting Article 66(c), UCMJ, does not authorize the lower courts, while reviewing a sentence, to take an action that is “arbitrary, capricious”). Article 66(c), UCMJ, empowers the CCAs to “do justice,” with reference to some legal standard, but does not grant the CCAs the ability to “grant mercy.” United States v. Boone, 49 M.J. 187, 192 (C.A.A.F.1998) (citation and quotation marks omitted). Granting mercy for any reason or no reason is within the purview of the convening authority. Id. Contra Lanford, 6 C.M.A. at 378-79, 20 C.M.R. at 94-95 (suggesting that intermediate appellate courts may grant clemency).
Moreover, although we have held that Article 66(c), UCMJ, permits a CCA to examine the record in a particular case and dismiss a finding because an accused’s criminality was unreasonably exaggerated by the same acts beings charged multiple ways, Quiroz, 55 M.J. at 338-39, we have never suggested that Article 66(c), UCMJ, permits a CCA to disapprove a legally and factually sufficient finding because it believes that the conduct — while falling squarely within the ambit of behavior prohibited by a constitutional criminal statute — should not be criminalized.[10] Nor could we. Oakland Cannabis Buyers’ Coop., 532 U.S. at 490-91, 498-99, 121 S.Ct. 1711 (rejecting the suggestion that even a court acting in equity could effectively decriminalize actions clearly barred under the Controlled Substances Act by crafting a medical-necessity exception to the Act’s prohibitions against marijuana).
D.
As demonstrated above, the broad language with which we have described the CCAs’ powers has been cabined in practice. While we have held that the CCAs can assess the record and determine whether the findings and sentence “should be approved” in the event of error even if the error did not rise to the level of requiring disapproval of the finding or sentence as a matter of law, those decisions arose in the context of trial and post-trial errors in which doctrines applicable to issues of law — such as waiver — would have precluded CCA action in the *147 absence of the “should be approved” language of Article 66(e), UCMJ.[11] See Quiroz, 55 M.J. at 338 (stating that the lower court, having identified an unreasonable multiplication of charges — an abuse of prosecutorial discretion — possessed the authority under Article 66(e), UCMJ, “to determine the circumstances, if any, under which it would apply waiver or forfeiture”); Wheelus, 49 M.J. at 288 (recognizing that, while clemency is the province of the convening authority, the intermediate courts have “broad power to moot claims of prejudice” under Article 66(e), UCMJ, related to error in the post-trial process); Claxton, 32 M.J. at 164 (approving a decision by the intermediate court to order a sentence rehearing in light of an evidentiary error during sentencing under circumstances in which waiver would have ordinarily precluded relief). We have expressly declined to agree that a CCA may disapprove a finding based on pure equity. Quiroz, 55 M.J. at 339.
To be clear, when a CCA acts to disapprove findings that are correct in law and fact, we accept the CCA’s action unless in disapproving the findings the CCA clearly acted without regard to a legal standard or otherwise abused its discretion. A CCA abuses its discretion when it disapproves a finding based on purely equitable factors or because it simply disagrees that certain conduct — clearly proscribed by an unambiguous statute — should be criminal. Even though a CCA is not required to identify the basis for its action, failure to do so makes it difficult to determine whether a CCA’s exercise of its Article 66(c), UCMJ, power was made based on a correct view of the law. The better practice, if a CCA sets aside a finding or sentence that is correct in law and fact, is for it to explain why the finding is unreasonable, based on a legal standard.
III.
Although this Court is required by statute to review the present appeal under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2006) (review of cases certified by the Judge Advocate General), Appellee argues that even if we identify an erroneous application of the law by the lower court, no remedial action— such as a remand to apply the correct principles of law — can be ordered.
Our precedent is to the contrary. In United States v. Leak, 61 M.J. 234 (C.A.A.F.2005), we observed that this Court, since the early days of the UCMJ, has reviewed lower court decisions under Article 67(a)(2), UCMJ, for compliance with the law, and we have not confined corrective action to those cases found by the lower court to be “incorrect in law.” See id. at 239-42; see also Quiroz, 55 M.J. at 338-39 (rejecting a factor the CCA used in conducting the unreasonable multiplication of charges analysis and remanding for the CCA to apply the correct factor); United States v. Thompson, 2 C.M.A. 460, 464, 9 C.M.R. 90, 94 (1953) (reversing a CCA’s factual sufficiency determination because it misapprehended the legal elements of the offense, and remanding for the CCA to conduct a new factual sufficiency review using the appropriate elements). Rather, the power to review a case under Article 67(a)(2), UCMJ, includes the power to order remedial proceedings, such as a remand, to ensure that the lower court reviews the findings and sentence approved by the convening authority in a manner consistent with a “correct view of the law.” See Leak, 61 M.J. at 242 (citation and quotation marks omitted).
Whether the CCA’s review in this case was consistent with a “correct view of the law” is an open question. The CCA appeared to believe it had unfettered discretion to disapprove a finding. The court identified no error — even error that would not preclude a determination that the finding was correct in law and fact — or other legal rationale with respect to the charge, the *148 specification, the finding, the trial, or the post-trial process that warranted exercise of its unique power under Article 66(c), UCMJ.[12] Nor did the CCA identify tangible factors, either by reference to other charges in the case or by reference to other eases, that led it to conclude that the finding “unreasonably exaggerate^] the criminality of’ the conduct, Nerad, 67 M.J. at 751-52, or any factor that caused the charge, albeit lawful, to constitute an abuse of prosecutorial discretion. Cf. United States v. Quiroz, 57 M.J. 583, 585-86 (N.M.Ct.Crim.App.2002) (finding an unreasonable multiplication of charges based on clearly explained factors).
While none of these factors are either required or dispositive, the CCA’s comment that it disapproved the finding because it was “not the sort of conduct which warrants criminal prosecution,” Nerad, 67 M.J. at 751, gives us pause, particularly in light of its failure to discuss any of the non-exclusive bases that may have made its action appropriate.
It is possible that the CCA believed it could set aside a finding in a guilty plea case where the accused was fully apprised of the collateral consequences of his conviction on the ground that it believed that: (a) Ap-pellee should not have been prosecuted; or (b) the convening authority should have granted the clemency Appellee requested. But both of those decisions are matters of command prerogative and, as such, are for the convening authority, not the CCA. Article 60(e), UCMJ; United States v. Travis, 66 M.J. 301, 303 (C.A.A.F.2008) (“Clemency is a highly discretionary command function of a convening authority.”) (citation and quotation marks omitted). Moreover, given the reasoning underlying the CCA’s decision here, the CCA may have disapproved the finding of guilty to the child pornography offense (which criminalizes the relevant conduct with persons under the age of eighteen without exception, see 18 U.S.C. § 2256(1)) based on its own judgment regarding the wisdom of applying the statute to eases where “the appellant was in the unique position of having a relationship with someone he could legally see naked and, but for his existing marriage, legally have sex with, but could not legally possess nude pictures of her that she took and sent to him.” Nerad, 67 M.J. at 751. This it may not do. See Badaracco v. Comm’r, 464 U.S. 386, 397-98, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (“Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.”).
If the CCA in fact based its decision on the above rationale, labeling the finding “unreasonable” does not transform a quintessentially equitable determination into a legal one. In light of the foregoing, the case is remanded for a new Article 66(c), UCMJ, review consistent with this decision.
IV.
The decision of the United States Ar Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Ar Force for remand to the United States Ar Force Court of Criminal Appeals for a new review under A'ticle 66(e), UCMJ, 10 U.S.C. § 866(c) (2006).

. The phrase "correct in law and fact,” Article 66(c), UCMJ, is used throughout our cases as synonymous with legal and factual sufficiency. See, e.g., United. States v. Beatty, 64 M.J. 456, 458 (C.A.A.F.2007) (equating the two while discussing the extent of a CCA’s power under Article 66(c), UCMJ, concluding that "[a] Court of Criminal Appeals may not affirm the findings and sentence of a court-martial unless it finds them to be both factually and legally sufficient. Article 66(c), UCMJ”); see also United States v. Reed, 54 M.J. 37, 41 (C.A.A.F.2000) ("The test for legal sufficiency requires courts to review the evidence in the light most favorable to the Government. If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient....
The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the court is convinced of the accused’s guilt beyond a reasonable doubt.”) (citations and quotation marks omitted). The latter determination is unique to the military justice system, as it requires a CCA to review the record de novo and determine whether the accused is guilty beyond a reasonable doubt.

. "In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.” Article 66(c), UCMJ.

. We note that Jackson v. Taylor, 353 U.S. 569, 77 S.Ct. 1027 (1957), does not control the question now before us because the Supreme Court had no occasion to address the "should be approved” language of Article 66(c), UCMJ, in the context of a sentence that was correct in law and fact. Jackson itself involved a situation where the sentence imposed by the court-martial was no longer "correct,” or even lawful, because the original sentence exceeded the maximum punishment permissible for the finding that remained. Id. at 570, 573-74, 77 S.Ct. 1027. In that context the Supreme Court affirmed the power of a board of review—the precursor to today's CCAs—to modify a sentence “in the manner it finds appropriate.” Id. at 579, 77 S.Ct. 1027. Jackson did not, however, limit boards of review to acting in instances where a sentence was not "correct.” Instead, it reiterated a broader proposition, consistent with the plain meaning of the statute: CCAs have the power to affirm only so much of a sentence as they find "appropriate.” Id. In any event, the dissent’s interpretation of Jackson, United States v. Nerad, 69 M.J. at 151— 52 (C.A.A.F.2010) (Stucky, J., dissenting), is squarely at odds with this Court’s interpretation. See United States v. Sills, 56 M.J. 239, 240 (C.A.A.F.2002); United States v. Miller, 10 C.M.A. 296, 299, 27 C.M.R. 370, 373 (1959).

. This holding supports a conclusion we reach with respect to the certified question: a CCA may not disapprove a finding based solely on equitable grounds.

. It is instructive that in two of this Court's relatively recent cases addressing the valid scope of CCA action under Article 66(c), UCMJ — Tardif, 57 M.J. at 230 (Sullivan, S.J., dissenting), and Quiroz, 55 M.J. at 345 (Sullivan, J., dissenting)— Waymire was cited in dissent for the very proposition relied upon by the Government and the dissent in this case. See Nerad, 69 M.J. at 153— 54 (Stucky, J., dissenting). Perhaps recognizing *144 this, the Government did not even raise Waymire until its reply brief to this Court.

. Drexler involved the disapproval of charges that were multiplicious. Id. at 407, 26 C.M.R. at 187. Multiplicious charges may be correct in law and fact (under the applicable standards of review for legal and factual sufficiency) but may nonetheless be disapproved by the CCA (using a legal standard). See Quiroz, 55 M.J. at 338-39. Drexler is thus consistent with our view that a CCA may only set aside a legally and factually sufficient finding on the basis of a legal — as opposed to equitable — ground.

. And, of course, the requirement that the CCA review the record to ensure that the findings are factually sufficient, that it is convinced beyond a reasonable doubt that the facts support a finding of guilt, permits it to do just that. See United States v. Washington, 57 M.J. 394, 399 (C.A.A.F.2002).

. Moreover, if "should be approved” modifies both findings and sentences, that approach cannot easily be reconciled with precedent acknowledging that a CCA may disapprove "correct” findings and sentences because they are nonetheless "inappropriate," or "unreasonable” as a matter of law. See, e.g., Quiroz, 55 M.J. at 339; Drexler, 9 C.M.A. at 408, 26 C.M.R. at 188. Jackson itself noted that Congress contemplated CCAs having the power to " ‘set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate.’” 353 U.S. at 577 n. 8, 77 S.Ct. 1027 (quoting S.Rep. No. 81-486, at 28 (1949), reprinted in 1950 U.S.C.C.A.N. 2222, 2254) (emphasis added).

. Contrary to the dissent’s assertion that our interpretation of Article 66(c), UCMJ, "discovers] a hitherto unknown power,” Nerad, 69 M.J. at 149 (Stucky, J., dissenting), the present opinion reflects the established analysis of the statute offered by the Court in our prior decisions. See supra 141-43; Tardif, 57 M.J. at 224; Quiroz, 55 M.J. at 338; United States v. Wheelus, 49 M.J. 283, 288 (C.A.A.F.1998); Claxton, 32 M.J. at 162.

. This is distinguished, of course, from the well-established authority of the President within the military justice system to clarify or give meaning to the UCMJ through promulgation of the Discussion and Analysis sections of the Manual for Courts-Martial, United States. See United States v. Contreras, 69 M.J. 120, 121 n.2 (C.A.A.F.2010) ("The President’s analysis of the punitive articles is persuasive, but not binding, authority.... Moreover, where the President’s narrowing construction is favorable to an accused and is not inconsistent with the language of a statute, we will not disturb the President’s narrowing construction, which is an appropriate Executive branch limitation on the conduct subject to prosecution.” (citing United States v. Miller, 67 M.J. 87, 89 (C.A.A.F.2008); United States v. Guess, 48 M.J. 69, 71 (C.A.A.F.1998))) (alterations and quotation marks omitted); see also United States v. Jones, 68 M.J. 465, 471-72 (C.A.A.F.2010).

. It is not accurate to equate — as the dissent implicitly does, Nerad, 69 M.J. at 150-51, 154 (Stucky, J., dissenting)—any and all error in the proceedings with the separate and distinct tests for whether the finding and sentence are “correct in law and fact.” Article 66(c), UCMJ; see supra note 1. A disparate sentence or a multiplicious finding can be correct in law and fact but nonetheless "inappropriate" or "unreasonable.” See, e.g., Quiroz, 55 M.J. at 339; United States v. Olinger, 12 M.J. 458, 460 (C.M.A.1982); Drexler, 9 C.M.A. at 408-09, 26 C.M.R. at 188-89.

. Under the present circumstances, where the CCA did not purport to disapprove the finding on the basis of a legal error, this case simply does not implicate or address Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006) ("A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.”). Contra Nerad, 69 M.J. at 149, 154-55 (Stucky, J., dissenting).